## THE ATKINS HUGHES.

## THE FANNY C. BOWEN.

(Circuit Court of Appeals, Third Circuit. June 20, 1917.)

### No. 2249.

COLLISION ☞95(1)—MEETING TOWS—FAILURE OF TOW TO FOLLOW TUG.

A collision in Delaware river at night between a schooner in tow on a 70-fathom hawser and a meeting tug and her tow alongside *held* due solely to the fault of the schooner, which, instead of following her tug, took a wide sheer to port, apparently because her helmsman mistook the lights of the meeting tug for those of her own tug, although the steering light of the latter was burning brightly; it appearing without contradiction that the tugs passed at a safe distance of probably 250 feet.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; W. H. Seward Thomson, Judge.

Suit in admiralty for collision by Arthur W. Simmons, master of the tug Columbia and bailee of M. D. C. Scow No. 31, against the Atkins Hughes and the schooner Fanny C. Bowen. Decree against the Bowen alone, and her claimant appeals. Affirmed.

The following is the opinion below of Thomson, District Judge, of the Western District of Pennsylvania, specially assigned:

Arthur W. Simmons, master of the tug Columbia, files this libel on behalf of the owners of the tug and as bailee of M. D. C. Scow No. 31, and in behalf of the owner of the said scow, against the steam tug Atkins Hughes and the schooner Fanny C. Bowen, in a cause of collision in the Delaware river. From the evidence the following facts appear:

On the night of July 6, 1914, the tug Columbia was proceeding down the Delaware river, bound for Ft. Mifflin, Pa. She had in tow a square-bowed barge loaded with mud; the scow projecting some 50 feet ahead of the tug. The vessel was keeping to the westward of the channel and making against the tide about 2½ miles per hour. There was a light wind, and the weather was somewhat rainy and cloudy, but not enough to seriously interfere with the lights being seen. The tug and scow had up their regulation lights, all properly set and burning. The master was in the pilot house at the wheel. Near 11 o'clock, as she was approaching the 17-foot lamp buoy in what is known as the horseshoe, the tug Atkins Hughes was seen a considerable distance away, bound up the river. She had in tow, on a hawser about 70 fathoms long, the schooner Fanny C. Bowen, a four-masted sailing vessel without cargo, bound for Philadelphia. The regulation lights were up and burning on both the tug and the schooner. When the tugs were about a mile apart, the Hughes gave a one-blast signal whistle, which was heard and promptly answered by one blast from the Columbia. The Columbia was on the westerly side of the channel, and the Hughes on the easterly side, and when the signals were sounded each tug changed her course slightly to the right, which tended to increase the passing space between them. This position, with reference to the channel, was maintained as the tugs approached, and they passed each other at a safe distance of from 225 to 250 feet; the width of the channel at that point being about 500 feet. As the tugs were passing, the schooner in tow of the Hughes took a heavy sheer to the left towards the Columbia. The captain at the wheel of the Columbia, seeing that the schooner was showing both side lights, red and green, instead of the red only, and that there was danger of collision, blew three blasts of the whistle, being the danger signal, at the same time throwing the helm hard-aport, which swung her bow to the right. When it became apparent that a collision was

imminent, the Columbia's engines were stopped and reversed full speed astern. The schooner struck the mud scow toward the forward end, which projected ahead of the tug, sinking it, and passed ahead and to the right of the tug, her hawser tearing off the top of the pilot house and carrying away the smokestack and both flagpoles.

For the damage sustained by the sinking of the scow and the injury to the tug, these libels were filed against the tug Hughes and the schooner Bowen. I am satisfied, from all the evidence, that no blame is properly chargeable against the Atkins Hughes, and that the accident was due solely to the negligence on the part of the officers in the navigation of the Fanny C. Bowen. It seems reasonably clear that the usual and necessary lights on the Hughes were in place and burning brightly. These included the towing lights on the forward mast, her running lights, red and green, her steering light on a pole astern about 30 feet from the deck, fixed in a box so that the light would show directly astern, and a light fixed under the overhang just over the bits. The towing light on the pole astern was examined within five minutes after the collision by Capt. Goslee of the Hughes, and by Mr. Wolfe, the chief engineer. The captain testifies that he sent a man to take the light down and bring it to him; that this was done, and he found it burning brightly; that he showed the light to Capt. Chase, of the schooner, who was then standing about 6 feet from him, and that he then directed the deck hand to put it back in place, which was done. The captain's testimony as to the light is supported by Mr. Wolfe, the chief engineer, by the deck hand, Johnson, who took the light down, and by Mr. Hastings, the second engineer; the last two witnesses testifying that they saw the light burning in place. There is no testimony on the part of the schooner that there was any difficulty in seeing the towing light of the Hughes. On the contrary, it appears from the testimony of Capt. Chase, the navigating officer of the schooner, that he was on deck from 8 o'clock; that about five minutes before the danger signals were blown he went across to the starboard side to see how the schooner was going with respect to the tug's light; that he saw the steering light of the Hughes; that it was burning brightly, and that the schooner was following the course of the tug; that this was the last time he saw the light until the signal blasts were blown.

I do not think that it can fairly be found under the evidence that there was any negligence in the navigation of the Hughes. The master was in the pilot house, steering the vessel, and a lookout was maintained on the forward deck. The master appears to have been maintaining proper lookout supervision of the schooner, and testifies to looking back but a short time before the collision, and saw the schooner following directly after his tug. The approaching tugs saw each other's lights and sounded the proper passing signals. Considering the width of the channel, I think the distance at which the tugs passed each other furnished an ample margin of safety, assuming that the schooner was being steered with ordinary care. But herein lay the fault. The schooner was dependent on the Hughes for her motive power, and generally for her navigation. The officers of the tug were required to perform their towing service with caution and skill, avoiding dangers which those skilled in navigation should know and provide against; the degree of care demanded being commensurate with the dangers naturally incident to the service which they undertook to perform. On the other hand, the duty of the schooner was to follow after. When the passing signals were blown, there were three men on the schooner's deck, the master, the helmsman, and the lookout. The master stood aft of the house, and walked across the deck from one side to the other to see if the helmsman was following the tug. The captain had given the helmsman orders to follow the tug. He gave no other orders until the danger signals were blown. The lookout testifies that he had been on duty until 11:45; that he left his position as lookout to call the watch, came down from the forecastle head to the well deck, and was about to return, when the danger signals were given and he was thrown to the deck by the collision; that he reported no lights, and did not see the Columbia or her scow until after the collision. Neither the lookout nor Capt. Chase heard the passing signals given by the tugs, although there is no question that they were given. The helmsman of the schooner did not appear as a witness.

Under all the evidence, I am satisfied that the helmsman of the schooner mistook the Columbia's lights for those of the Hughes, suddenly changing her course across the bow of the Columbia, causing the accident which resulted. This is indicated in a conversation which Mr. Mears, engineer of the Columbia, says he had with Capt. Chase as to what caused the accident. This witness says: "He [Capt. Chase] told me the vessel had been following very nicely all night, and he could not account for such a sheer, unless the man at the wheel took her lights to be the Hughes'. He said he was on deck, but stood under the side of the house to keep from getting wet. It was raining."

In view of the facts herein set forth, the court is of opinion that the libelant is entitled to recover against the Fanny C. Bowen the damages sustained by the collision, together with the costs, and that the libel against the Atkins Hughes should be dismissed. A decree may be drawn accordingly.

Howard M. Long, of Philadelphia, Pa., for the Fanny C. Bowen.

Lewis. Adler & Laws and John F. Lewis, all of Philadelphia, Pa., for the Columbia.

Willard M. Harris, of Philadelphia, Pa., and Park & Mattison, of New York City, for the Atkins Hughes.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

PER CURIAM. It must be admitted that one rather perplexing circumstance in this case is the apparent lack of material injury to the schooner; but this cannot be allowed to outweigh the strong and positive testimony that she, and she alone, is the vessel that did the damage. We see no reason to add anything to Judge Thomson's satisfactory opinion, and therefore adopt it as our own.

The decree is affirmed.